UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| YVONNE SKEEN, individually | § | |
| and on behalf of the Estate of | § | |
| RYAN MATTHEW PADILLA, Deceased, | § | |
| | § | CIVIL ACTION NO. |
| Plaintiff, | § | |
| v. | § | SA-07-CV-0987 OG (NN) |
| | § | |
| COMAL INDEPENDENT SCHOOL | § | |
| DISTRICT, and | § | |
| CREEK HOLLOW R.V. PARK, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

TO:   Hon. Orlando Garcia
      United States District Judge

This memorandum and recommendation addresses the motion to dismiss filed by defendant Comal Independent School District (the District).[1]  I have authority to make this recommendation pursuant to the district court's order of referral.[2]  After considering the motion and the pleadings on file, I recommend granting the motion and dismissing this case.

### Background of the Case

This lawsuit arose from a tragic accident that occurred after decedent Ryan Matthew Padilla disembarked from a school bus operated by the District.  Padilla was struck by a motorist who veered onto the shoulder of the road Padilla was crossing.  Padilla's mother—plaintiff

---

[1]Docket entry # 15.

[2]Docket entry # 16.

Yvonne Skeen—brought this action as Padilla's survivor under the Texas survivor's statute and as a beneficiary under the Texas Wrongful Death Statute.  Skeen sued the District and defendant Creek Hollow R.V. Park (the Park) for various causes of action.  Skeen sued the District for a violation of Padilla's right to substantive due process under section 1983 based on the loss of Padilla's life and liberty.  Skeen's civil rights cause of action is based on three theories: (1) state-created danger,[3] (2) conscious indifference of an official policy, practice or custom,[4] and (3) special relationship.[5]  Skeen also sued the District and the Park for the state-law cause of action of negligence.[6]  The District moved to dismiss Skeen's claims under Rule 12(b)(6).[7]  Although Skeen did not respond to the District's motion, she responded to the District's earlier motion to dismiss.[8]  Because the District made the same arguments in the earlier motion, I considered Skeen's response to the earlier motion.

**Standard for a Motion to Dismiss**

A defendant in a civil action may move to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief may be granted."[9]

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts

---

[3]*See* docket entry # 12, ¶ 34.

[4]*See id*. at ¶ 35.

[5]*See id*. at ¶ 36.

[6]*See id*. at ¶¶ 38-43 (the District) & 44-49 (the Park).

[7]Fed. R. Civ. P. 12(b)(6) (permitting defendant to move to dismiss claims for failure to state a claim upon which relief may be granted).

[8]Docket entry # 7.

[9]Fed. R. Civ. P. 12(b)(6).

to state a claim to relief that is plausible on its face."  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[10]

## Skeen's Civil Rights Cause of Action

"The Due Process Clause of the Fourteenth Amendment provides that '[n]o State shall ... deprive any person of life, liberty, or property, without due process of law.'"[11]  Skeen alleges that the District violated her son's right to life and liberty by exposing him to injury or death by discharging him from a school bus on a busy highway.[12]  Skeen's allegation includes the language "procedural due process,"[13] but Skeen's claim invokes the substantive rather than the procedural component of the Due Process Clause because Skeen does not claim that the District exposed Padilla to injury or death without according him appropriate procedural safeguards.[14]

The Due Process Clause prohibits a state actor like the District from depriving a person of life or liberty without due process of law, "[b]ut nothing in the language of the Due Process Clause itself requires the State to protect the life [or] liberty . . . of its citizens against invasion by private actors."[15]  Here, there can be no doubt that the harm inflicted on Padilla came at the hands of a private actor—Roy Mack Miller, the driver who veered into the shoulder of the highway and

---

[10]*In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

[11]*DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 194 (1989) (quoting the Due Process Clause of the U.S. Constitution).

[12]*See* docket entry # 12, ¶ 35.

[13]*See id.*

[14]*See DeShaney*, 489 U.S. at 194-95.

[15]*DeShaney*, 489 U.S. at 196.

3

struck Padilla.[16]  Nevertheless, there are two exceptions to the rule "that a State's failure to protect an individual against private violence . . . does not constitute a violation of the Due Process Clause."[17]  The District maintains that nether exception applies to this case.[18]

The first exception applies when a "special relationship" exists between the plaintiff and the state actor.  A special relationship exists where a state actor affirmatively exercises its power so as to restrain an individual's liberty such that it renders the individual unable to care for himself, and at the same time fails to provide for the individual's basic human needs, as in the case of a prisoner or a person involuntarily committed to a mental health institution.[19]  "[O]nly when the state, by its affirmative exercise of power, has custody over an individual *involuntarily* or *against his will* does a 'special relationship' exist between the individual and the state."[20]  Skeen relies on Texas's compulsory school-attendance law to characterize Padilla as a ward of the District.[21]  According to Skeen, the compulsory-attendance law creates a special relationship between a student and a school.  No basis, however, exists for characterizing a child discharged from a school bus as a ward of the state or having a special relationship with the school.  Riding a school bus and being discharged from a school bus does not rise to the level of restraining an individual's liberty such that it renders the individual unable to care for himself, and at the same

---

[16]Docket entry # 12, ¶ 5.

[17]*DeShaney*, 489 U.S. at 197.

[18]*See* docket entry # 15, pp. 4-6.

[19]*DeShaney*, 489 U.S. at 200.

[20]*Walton v. Alexander*, 44 F.3d 1297, 1303-04 (5th Cir. 1995).

[21]*See* docket entry # 7, ¶ 8.

time failing to provide for the individual's basic human needs.  Skeen is correct that the Fifth Circuit has recognized that "a persuasive argument can be made for applying a . . . 'special relationship' in some measure to public school students who are forced by compulsory education laws to attend school,"[22] but Skeen's claim fails for at least two reasons.  First, even though Padilla may have been compelled to attend school, any special relationship that may have existed lapsed when compulsory attendance ended.[23]  Second, Padilla's death is attributable to the fortuity that a motorist disregarded a school-bus stop sign and veered into the shoulder of the road where children are disembarking, not compulsory attendance.[24]  The District is entitled to dismissal of the claim based on special relationship.

The second exception applies when a state actor creates a danger that harms the plaintiff. To rely on the state-created danger exception, "a plaintiff must show the defendants used their authority to create a dangerous environment for the plaintiff and that the defendants acted with deliberate indifference to the plight of the plaintiff."[25]  Skeen alleges that the District created a danger when the bus driver, upon seeing what was about to occur, shouted "Stop," causing Padilla to stop and be hit by the motorist.[26]  The Fifth Circuit, however, has resisted adoption of the state-created danger theory of liability under the Due Process Clause.  As recently as July

---

[22]*Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 203 (5th Cir. 1994).

[23]*See Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 529 (5th Cir. 1994).

[24]*See Johnson*, 38 F.3d at 203 (explaining that father's claim based on special relationship failed where his son's death at school was attributable to the fortuity that an armed, violent non-student trespassed on campus).

[25]*Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 537-38 (5th Cir. 2003).

[26]*See* docket entry # 12, ¶¶ 5 & 20.

2007, the Fifth Circuit withdrew portions of an opinion which explicitly recognized the state-created danger theory in a case that placed the theory squarely before the court—the Aggie bonfire disaster that resulted in the deaths of 12 university students and injuries of 27 others in November 1999.[27]  The court's original opinion discussed the history and limits of the theory in considering claims that a state university violated students' rights to bodily integrity under the substantive component of the Fourteenth Amendment's Due Process Clause by creating or exacerbating the dangerous situation that ultimately injured the students.[28]  The court, however, withdrew the discussion in a subsequent opinion.[29]  That case is not the first time in which the court has expressed its reluctance to adopt the state-created danger theory.[30]  The tragedy of the

---

[27]*See Breen v. Texas A&M Univ.*, 485 F.3d 325, 329-30 (5th Cir. 2007) (discussing the procedural background of the lawsuits arising out of the Aggie bonfire disaster in November 1999 and explaining that the plaintiffs relied on the state-created danger theory).

[28]*See Breen*, 485 F.3d at 331-38.

[29]*See Breen v. Texas A&M Univ.*, 494 F.3d 516, 518 (5th Cir. 2007).

[30]*See Longoria v. Texas*, 473 F.3d 586, 593 (5th Cir. 2006) (stating that the court has explicitly rejected the state-created theory of liability); *Rios v. City of Del Rio*, 444 F.3d 417, 424 (5th Cir. 2006) (explaining that court has never explicitly adopted the state-created danger theory and rejecting application of the theory in absence of a known victim); *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004) (insisting that the court has consistently refused to recognize the state-created danger theory even where the question of the theory's viability has been squarely presented); *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 249 (5th Cir. 2003) (stating that the court has never recognized state-created danger as a trigger of a state actor's affirmative duties under the Due Process Clause and declining to do so in case where parents of deceased student killed in a gang fight at school alleged that the school established a custom of tolerating gang activity such that it constituted official policy and the custom increased the danger to their son); *Piotrowski v. City of Houston*, 51 F.3d 512, 517 (5th Cir. 1995) (reasoning that even if the plaintiff had alleged a state-created danger, she has failed to allege facts  implicating the state actor); *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 532 (5th Cir. 1994) (explaining that even if substantive due process imposed a duty on the school to protect a student from dangers arising out of sponsorship of a school dance, the plaintiff failed to allege a violation of the student's due process rights because she did not allege facts that demonstrated deliberate indifference to the dangers on the part of the school).

loss of a child in this case compares to the tragedy of the deaths and injuries of the students in the Aggie bonfire cases, but the role of the state actor in creating the danger is different.  In this case, the District discharged Padilla to the shoulder of the highway near his home; in the Aggie bonfire case, the university endorsed a tradition of students stacking thousands of logs to build a massive bonfire structure on the university campus.  If the court was unwilling to embrace the theory in the Aggie bonfire case, there is no reason to believe that it would do so on the facts in this case. Skeen may have alleged enough to satisfy the elements of a state-created danger case, but the Fifth Circuit's reluctance to embrace the state-created danger theory entitles the District to dismissal of the claim.

        To the extent that Skeen relies solely on the District's conscious indifference of an official policy, practice or custom, that claim likewise fails.  Skeen alleges that the District had a policy of instructing bus drivers to avoid unloading students on a highway, to include the highway where Padilla was struck,[31] and that the driver of Padilla's bus followed the oral instructions of her supervisor to disregard the policy.[32]  The District argues that it is entitled to dismissal of this claim because Skeen has not alleged any facts that would implicate the District under section 1983.[33]  To hold a state actor liable for the deprivation of a constitutional right under section 1983, a direct causal link must exist between the policy or custom and the alleged

---

[31]Docket entry # 12, ¶ 20.

[32]Docket entry # 12, ¶ 30.

[33]*See* docket entry # 15, p. 6.

constitutional deprivation.[34]  "This connection must be more than a mere 'but for' coupling between cause and effect."[35]  To form the basis of liability under section 1983, the policy must be "affirmatively linked to the constitutional violation and be the moving force behind it."[36]  Here, the moving force behind the loss of Padilla's life and liberty was Roy Mack Miller, not the District.  The causal connection between the District's alleged actions and Padilla's death is so attenuated as to fail as a matter of law.  Even if true, Skeen's allegations are insufficient to raise a right to relief above the speculative level.[37]  The District is entitled to dismissal of Skeen's claim.

### Skeen's State-law Claims

The District asks the court to decline to exercise supplemental jurisdiction over Skeen's state-law negligence claims if it dismisses Skeen's federal claims.  A federal court may decline to exercise supplemental jurisdiction over state-law claims if "the district court has dismissed all claims over which it has original jurisdiction . . . ."[38]  Because the limitations period has run on

---

[34]See City of Canton v. Harris, 489 U.S. 378, 385 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."); Doe v. Rains County Indep. Sch. Dist., 66 F.3d 1402, 1416 (5th Cir. 1995) (explaining that there must be a causal connection between state authority and an alleged constitutional injury); Reimer v. Smith, 663 F.2d 1316, 1322 n.4 (5th Cir. 1981) ("It is axiomatic that a plaintiff cannot succeed in a section 1983 action if he fails to demonstrate a causal connection between the state official's alleged wrongful action and his deprivation of life, liberty, or property.").

[35]Fraire v. City of Arlington, 957 F.2d 1268, 1281 (5th Cir. 1992).

[36]Fraire, 957 F.2d at 1281.

[37]In re Katrina Canal Breaches Litigation, 495 F.3d at 205.

[38]28 U.S.C. § 1367(c)(3).

Skeen's negligence claims,[39] dismissal appears to be a harsh result, but Skeen's negligence claims fail because she has the same problem with causation.  "To prevail on a negligence . . . claim [in Texas], a plaintiff must plead and prove that the defendant's negligence was the proximate cause of his injury.  To establish proximate cause, a plaintiff must prove foreseeability and cause in fact."[40]  "'These elements cannot be established by mere conjecture, guess, or speculation.'  The test for cause in fact is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred.  If the defendant's negligence merely furnished a condition that made the injuries possible, there can be no cause in fact."[41]  While arguably and allegedly the District furnished a condition that made Padilla's injuries possible, that is not enough for cause in fact.  The substantial factor causing Padilla's injuries was the car that struck Padilla.  Consequently, Skeen's claims fail.  No reason exists for the court to exercise supplemental jurisdiction over claims that fail.

## Recommendations

For the reasons discussed above, I recommend GRANTING the District's motion (docket entry # 15) and DISMISSING Skeen's civil rights claims for failure to state a claim under Rule 12(b)(6).  I also recommend the Court decline to exercise supplemental jurisdiction over Skeen's state-law claims—to include the claims against Creek Hollow—and DISMISSING those state-

---

[39] *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(b) ("A person must bring suit not later than two years after the day the cause of action accrues in an action for injury resulting in death. The cause of action accrues on the death of the injured person.").

[40] *Ambrosio v. Carter's Shooting Ctr.*, 20 S.W.3d 262, 265 (Tex. App.—Houston [14 Dist.] 2000, pet. denied) (citations omitted).

[41] *Western Investments v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005) (citations omitted).

law claims under 28 U.S.C. § 1367(c)(3).

To the extent that plaintiff may claim a lack of notice of the court's sua sponte consideration of claims against Creek Hollow, Skeen may consider this memorandum and recommendation as notice.  If the district court accepts these recommendations, it may enter a final judgment in this case.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this memorandum and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[42]  **Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.** A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[43]  Additionally, failure to file timely written objections to the proposed findings, conclusions and

---

[42]28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[43]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

10

recommendations contained in this memorandum and recommendation shall bar the aggrieved

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed

factual findings and legal conclusions accepted by the district court.[44]

      **SIGNED** on April 29, 2008.


*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[44]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).